NOT FOR PUBLICATION (Doc. No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| DAVID W. BOWEN, SR., | : | |
| Plaintiff, | : | Civil No. 14-3531 (RBK/AMD) |
| v. | : | **OPINION** |
| BANK OF AMERICA, N.A. et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion to Dismiss of Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), Litton Loan Servicing, LP ("Litton"), and PNMAC Mortgage Opportunity Fund Investors, LLC ("PNMAC") (collectively "Defendants"), Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. No. 5.) For the reasons stated herein, Defendants' Motion to Dismiss will be granted in part and denied in part.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

David W. Bowen, Sr. ("Plaintiff") entered into a mortgage loan for the purchase of his residence located at 123 Harding Highway, Pittsgrove, New Jersey (the "Property") on January 4, 2007. (Compl. ¶ 10.) New Century Mortgage Corporation ("New Century") was the original lender, and MERS was named as the nominee mortgagee. (Id.) The mortgage loan on the Property was subsequently assigned to Bank of America, N.A. ("BANA") c/o Litton on September 19, 2007. (Id. ¶ 12.) Then, on August 13, 2012, the mortgage loan on the Property was assigned from BANA to PNMAC. (Id. ¶ 15.)

1

Because Plaintiff defaulted on the mortgage loan, PNMAC filed a foreclosure complaint against the Property on January 9, 2013, (the "Foreclosure Action"), in Salem County, New Jersey, Chancery Division.  (Certification of David A. DeFleece ("DeFleece Cert."), Ex. A.)  Plaintiff failed to plead or otherwise defend the Foreclosure Action, and PNMAC filed a Request to Enter Default on May 10, 2013.  (Id., Ex. B.)  Default was entered and the Foreclosure Action proceeded to final judgment against Plaintiff on January 8, 2014.  (Id., Ex. C.)  Thereafter, a Writ of Execution was issued directing the sale of the Property.  (Id., Ex. D.)

On May 19, 2014, Plaintiff filed an Emergent Application for Stay of Sheriff's Sale in the Foreclosure Action, which was denied by order of the New Jersey state court issued on the same date.  (Id., Ex. E.)  After Plaintiff's Emergent Application for Stay of Sheriff's Sale was denied, the Property was sold at Sheriff's Sale to PNMAC as the successful bidder.  (Id., Ex. F.)  On or about July 18, 2014, PNMAC filed a Writ of Possession, seeking to obtain possession of the Property from Plaintiff.  (See id., Ex. G; Defs.' Br. at 2.)

Plaintiff filed the present Complaint, together with an ex parte application for a temporary restraining order, on June 3, 2014.  (Doc. No. 1)  The Complaint alleges several causes of action, including: violations of the Real Estate Settlement Procedures Act ("RESPA") (Count I); violations of the Truth in Lending Act ("TILA") (Count II); violations of the Fair Credit Reporting Act ("FCRA") (Count III); intentional misrepresentation (Count IV); unjust enrichment (Count V); civil conspiracy (Count VI); wrongful foreclosure (Count VII); cancellation of the various loan documents (Count VIII); and quiet title (Count IX).

On September 8, 2014, Defendants filed the instant Motion to Dismiss for Lack of Jurisdiction, arguing Plaintiff's claims are all barred by the Rooker-Feldman doctrine, based on

the previously entered final judgment in PNMAC's Foreclosure Action.  Because the parties have briefed the issues in this case, the Court will proceed to a discussion of their arguments.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction.  See Gould Electronics Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).  "[I]n a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction."  Id. (citing Mortensen v. First Fed. Sav. And Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Id. (citing PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "In reviewing a factual attack, the court may consider evidence outside the pleadings."  Id. (citing Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir. 1997)); see United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).  A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "[N]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

### III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) based on the Rooker-Feldman doctrine. They claim Rooker-Feldman prohibits Plaintiff from challenging the validity of the mortgage transaction and the entry of judgment in the New Jersey Superior Court Foreclosure Action, and any action taken by the Court in this case would necessarily undermine that state court judgment. (See Defs.' Br. at 4.) Because the Court finds that some of the relief sought by Plaintiff would not necessarily implicate the state court's judgment in the Foreclosure Action, it will only grant Defendants' Motion to Dismiss as to Counts II, VII, VIII, and IX, and will deny their Motion as to Counts I, III, IV, V, and VI.

**(a) The Rooker-Feldman Doctrine**

The Supreme Court decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), established the basic principle that a federal district court cannot exercise jurisdiction if it would result in "overturn[ing] an injurious state-court judgment." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005).

The Rooker-Feldman doctrine is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." In Re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (quoting FOCUS v. Allegheny Cnty. Court of Common Pleas, 75 F.3d 834, 840 (3d Cir 1996)). Accordingly, a claim is barred by Rooker-Feldman under two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of

4

the federal action" or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." In Re Madera, 586 F.3d at 232 (quoting In Re Knapper, 407 F.3d 573, 580 (3d Cir. 2005)).

A federal claim is "inextricable intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. In Re Madera, 586 F.3d at 232 (quoting In Re Knapper, 407 F.3d at 580). "In the first circumstance … Rooker-Feldman bars the plaintiff's federal claim because granting the plaintiff relief would require the federal court to conclude that the State Court made an incorrect factual or legal determination. In cases falling into this category, federal relief can only be predicated upon a conviction that the state court was wrong." Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004) (quoting Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003)). That inquiry requires identifying the pillars on which the state-court judgment rests, which includes considering questions of state law that the state court was obligated to reach in order to render its decision. Walker, 385 F.3d at 330 (internal citations omitted).

For instance, in In Re Madera the Third Circuit affirmed the District Court's holding that the claim was inextricably intertwined with the Court of Common Pleas' foreclosure judgment because granting rescission would amount to finding that no valid mortgage existed, which would negate the foreclosure judgment, as a "mortgage foreclosure action depends upon the existence of a valid mortgage." 586 F.3d at 232. A plaintiff's claim may be "inextricably intertwined" with the state court adjudication where he cannot prevail on his federal court claim

5

unless the court "pull[s] the thread that [would] unravel the [ ] fabric of the state court's order." Walker, 385 F.3d at 332.[1]

In the second situation, "the plaintiff's federal claim is precluded because the relief sought would undo or prevent the enforcement of the state court's order." Id. Thus, any action that would prevent a state court from enforcing its orders would negate the state court's judgment and preclude jurisdiction under Rooker-Feldman. In Re Knapper, 407 F.3d at 580.

The Third Circuit has explained that Rooker-Feldman divests a court of jurisdiction where "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotation marks omitted) (quoting Exxon Mobil, 544 U.S. at 284).

Defendants argue that these four factors are all satisfied and the Court cannot retain jurisdiction in this case. (Defs.' Br. at 5-6.) The Court agrees that the first and third factors set forth in Great Western are both met, as final judgment was entered in the Foreclosure Action against Plaintiff on January 8, 2014, prior to the initiation of this case in federal court. (See DeFleece Cert., Ex. C.) In several instances, Plaintiff is complaining about the injuries caused by the state court judgment and requesting this Court, either explicitly or implicitly, to review

---

[1] In Walker v. Horn, the state court ordered an injunction authorizing prison officials to force-feed the plaintiff. 385 F.3d at 330. The plaintiff then filed a procedural due process claim in Federal District Court, asserting that there were inadequate procedural safeguards in place to ensure that the decision to force-deed someone was neither arbitrary nor erroneous, and that the prison officials ignored those procedural safeguards. Id. at 328. The Third Circuit agreed that the due process claim was barred by Rooker-Feldman. While the plaintiff's due process claim was not a frontal attack on the propriety of the state court order, it "question[ed] the propriety of the state court's order." Id. at 331 (emphasis added). The plaintiff was "clearly claiming that had he been given adequate procedural due process, the state court would not have entered an erroneous order to force-feed him." Id. In other words, prevailing on the procedural due process claim would have required the District Court to pull apart the constitutional foundation for the state court's decision, which is barred by Rooker-Feldman. Id.

6

and reject the state court's judgment. These claims are barred by Rooker-Feldman. However, there are multiple Counts that would not necessarily require this Court to make findings which would undercut the validity of the state court's foreclosure judgment, or result in a decision at odds with the state court's judgment, should Plaintiff prevail on those claims. Such claims are not barred by Rooker-Feldman at this time.

In order to address the applicability of the Rooker-Feldman doctrine to Plaintiff's claims, the Court will first consider the state court's judgment in the Foreclosure Action, and what the state court was required to find in reaching its decision. See Desi's Pizza, 321 F.3d 421 (citing Ernst v. Child & Youth Servs., 108 F.3d 486 (3d Cir. 1997)). Then, the Court will consider each of the counts in Plaintiff's Complaint in deciding whether they necessarily implicate the state court's judgment or its underlying foundation.

**(b) The Foreclosure Action**

In New Jersey, a foreclosure action requires a court to determine "the validity of the mortgage and the amount of indebtedness due theron, … and to adjudicate the right to foreclosure, namely, to resort to the mortgaged lands for satisfaction of the indebtedness." Central Penn. Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289 (Ch. Div. 1982) (internal citations omitted) (citing Fidelity Union Trust Co. v. Guterl, 130 N.J. Eq. 404, 406 (1941), Montclair Savings Bank v. Sylvester, 122 N.J. Eq. 518, 522 (1937), and Fidelity Union Trust Co. v. Stengel, 131 N.J. Eq. 393, 396-397 (Ch. 1942)); see also Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 272 (App. Div. 2001) (noting that a foreclosure action "is a quasi in rem procedure to determine not only the right to foreclose, but also the amount due on the mortgage.") (internal citations omitted) (citing Resolution Trust Corp. v. Berman Indus., Inc., 271 N.J. Super. 56, 62 (Law Div. 1993) and Central Penn. Nat'l Bank, 185 N.J. Super. at 302).

7

In the Foreclosure Action the New Jersey Superior Court determined that the mortgage on the Property, and its assignment to PNMAC, were valid, and that Plaintiff owed PNMAC $255,435.62 together with interest.  (See DeFleece Cert., Ex. C.)  The Court also ordered that the Property be sold at Sheriff's Sale to satisfy the money due to PNMAC.  (Id.)  All that was required for the state court to enter this judgment, after the entry of default, was the submission of certain proofs pertaining to the mortgage, evidence of indebtedness, assignments, claim of lien, and any other document upon which PNMAC's claim was based.  See N.J. Stat. § 4:64-1(d)(4) (stating that a court "may enter final judgment upon proofs as required by R. 4:64-2."); see also § 4:64-2(a) (requiring proofs of "the original mortgage, evidence of indebtedness, assignments, claim of lien, … and any other original document upon which the claim is based" be submitted along with an affidavit by the moving party to a default judgment motion in a foreclosure action).

Therefore, this Court finds that the state court determined that the mortgage on the Property was valid, Plaintiff owed over $250,000.00 on the mortgage, PNMAC was the current mortgage holder, and PNMAC was entitled to foreclose on the Property based on the monies owed.

    **(c)  The Complaint**

        **(i)  RESPA (Count I)**

In Count I Plaintiff claims BANA and Litton violated RESPA, 12 U.S.C. §§ 2601 et seq., when they "accepted charges for the rendering of real estate services which were, in fact, charges other than for services actually performed." (Compl. ¶ 64 (citing 12 U.S.C. § 2607).)  As a result of this alleged violation of RESPA, Plaintiff seeks "three [ ] times the amount of charges paid by Plaintiff for 'settlement services' pursuant to [§ 2607(d)(2)]."  (Compl. ¶ 65.)

8

On its face this claim does not appear to run afoul of the Rooker-Feldman doctrine. Nothing in it suggests that this Court must impeach the final judgment in the Foreclosure Action, or unravel the thread that supports the state court's judgment by questioning the validity of the mortgage or the debt owed. See Walker, 385 F.3d at 332. Accordingly, the Court will deny Defendants' Motion with respect to Count I.[2]

### (ii) TILA (Count II)

In Count II Plaintiff alleges several violations of TILA, 15 U.S.C. §§ 1601 et seq., including the failure to disclose certain finance charges, improperly calculating the annual percentage rate, and not "disclos[ing] the true nature of the actual transaction which occurred once the loan originator acquired the signatures and personal financial information from the Plaintiff." (Compl. ¶¶ 67-69a.)[3] However, the only remedy Plaintiff seeks for these violations of TILA is a rescission of the mortgage. (Compl. ¶ 69b.)

Because granting a rescission would "amount to finding that no valid mortgage existed, which would negate the foreclosure judgment, as a mortgage foreclosure action depends upon the existence of a valid mortgage," In re Madera, 586 F.3d at 232 (internal quotation marks omitted), the Court finds that Count II is barred by Rooker-Feldman. Defendants' Motion to Dismiss will be granted as to Count II.

### (iii) FCRA (Count III)

---

[2] In several instances, Plaintiffs' claims are vague enough, or worded generally enough, that they are not necessarily barred by Rooker-Feldman upon a reading of the Complaint. The Court notes that neither Defendants nor the Court are prohibited from raising Rooker-Feldman concerns in the future if it is evident that Plaintiff is merely attempting to litigate the validity of the mortgage and the state court's foreclosure judgment during the course of litigating the remaining claims. Nor is the Court's decision to deny Defendants' Motion with respect to these claims an indication of whether these claims would survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

[3] There are two paragraphs in the Complaint numbered "69." The Court will refer to the first and second of those paragraphs as "69a" and "69b," respectively.

9

Plaintiff alleges Defendants "wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies," in violation of the FCRA. (Compl. ¶¶ 71-72.) While Plaintiff is not explicit about what actions Defendants took in violation of the FCRA, he does allege that the negative information reported by Defendants "included, but was not limited to, an excessive amount of debt through an unconscionable contract into which Plaintiff was tricked and deceived into signing." (Id. ¶ 73 (emphasis added).) Because of Defendants alleged actions, Plaintiff seeks compensatory damages, including damages for emotional distress and humiliation, damages for negligent non-compliance with the FCRA, and damages for willful non-compliance with the FCRA. (Id. ¶¶ 75-77.)

Plaintiff's claim would be barred by Rooker-Feldman to the extent it seeks to recover damages from Defendants for reporting related to the mortgage on the Property based on the theory that the mortgage was invalid. However, Plaintiff leaves the door open for other theories of recovery which do not depend on the Court's deciding the validity of the mortgage. For this reason, the Court will deny Defendants' Motion to Dismiss with respect to Count III.

### (iv)   Intentional Misrepresentation (Count IV)

Plaintiff's intentional misrepresentation claim in Count IV avers that Defendants intentionally concealed material information from Plaintiff before and at the closing of the loan, prior to and during the foreclosure process, and during the Foreclosure Action. (Id. ¶ 79.) Defendants also allegedly "misrepresented material information to the Plaintiff with full knowledge by Defendant that its affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made." (Id. ¶ 80.) As a result of these misrepresentations, Plaintiff claims he "suffered damages." (Id. ¶ 84.)

Though it again appears Plaintiff may wish to litigate the validity of the mortgage in Count IV, which he cannot do, the claim itself does not necessitate dismissal under Rooker-Feldman at this time. Plaintiff may also recover damages for intentional misrepresentation consistent with the existence of a valid mortgage and the state court's foreclosure judgment. Therefore, the Court will deny Defendants' Motion as it relates to Count IV.

### (v) Unjust Enrichment (Count V)

In Count V Plaintiff alleges that Defendants were unjustly enriched by "retain[ing] the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits and gains stemming from actions including, but not limited to, resale of mortgages and notes using Platiniff's identity, credit score and reputation without consent," (id. ¶ 88), and "though receipt of payments from third parties … stemming from false claims made which are based, at least in part, upon their claims of 'ownership' of the subject loan and the expectations of payments from the Platiniff under false pretenses." (Id. ¶ 90.) Plaintiff demands restitution for Defendants in the form of "actual damages, exemplary damages, and attorney's fees." (Id. ¶ 91.)

While Plaintiff's unjust enrichment claim would be barred to the extent that it is premised on the mortgage being invalid, Count V does not require the Plaintiff to make such a showing to prevail. Plaintiff has apparently alleged other conduct on behalf of Defendants which would not call into question the existence of the mortgage or the basis of the state court's judgment, including the conduct of Defendants prior to the settlement of the mortgage. As such, the Court will deny Defendants' Motion with respect to Count V.

### (vi) Civil Conspiracy (Count VI)

Count VI is another example of vague pleading which survives Defendants' present Rule 12(b)(1) Motion to Dismiss, but likely would not survive a motion made under Rule 12(b)(6). In

Count VI, Plaintiff alleges that Defendants agreed amongst themselves to engage in a course of conduct "designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff." (Id. ¶ 93.) Plaintiff further alleges that, as a result of the actions of defendants he suffered damages and now seeks "actual, compensatory, and punitive damages." (Id. ¶¶ 96-97.) Though merely reciting the elements of a civil conspiracy claim, Plaintiff does not indicate that this claims rests upon the validity or legality of the mortgage or the state court's decision to grant PNMAC's request for foreclosure.

Because Plaintiff's ability to prevail on Count VI does not necessarily require the Court to make any findings or decisions which are barred by Rooker-Feldman, the Court will deny Defendants' Motion to Dismiss as to Count VI.

### (vii) Wrongful Foreclosure (Count VII)

In Count VII Plaintiff explicitly asks the Court to vacate the final judgment in the Foreclosure Action, because it was allegedly based on fraud. (Id. ¶ 106.) Plaintiff attacks the validity of the loan instruments, the authority of PNMAC to institute a foreclosure proceeding, and the existence of his debt, throughout Count VII. (See id. ¶¶ 99-102.) Not only would a favorable decision for Plaintiff on Count VII require the Court to find that no valid mortgage existed, it would also have the effect of overruling the state court's judgment. For these reasons, Count VII is barred by the Rooker-Feldman doctrine, and Defendants' Motion to Dismiss will be granted for this count.

### (viii) Cancellation of the Loan Instruments (Count VIII)

Though Plaintiff does not specifically request that the Court vacate or set aside the state court's judgment in Count VIII, he does request that the Court cancel or invalidate all of the prior

loan-related transactions, including the creation of the mortgage in 2007. (See id. ¶¶ 108-09.) Plaintiffs' request for damages in an amount "not less than $1,000,000.00," (id. ¶ 111.) belies the fact that this is a claim that actually seeks to annul the mortgage and attack the grounds for the state court's judgment in the Foreclosure Action. Because any decision nullifying the mortgage would have the effect of invalidating the Foreclosure Action, the Court finds that this count is barred by the Rooker-Feldman doctrine. See In re Madera, 586 F.3d at 232. Accordingly, Defendants' Motion to Dismiss will be granted as to Count VIII.

### (ix) Quiet Title (Count IX)

Plaintiff's quiet title claim in Count IX seeks to have the Court declare that title to the Property is vested in him alone, and Defendants have no right, title, or interest in the property. (Compl. ¶¶ 119-20.) In support of this relief, Plaintiff notifies the parties that he intends to rescind the mortgage and loan transaction through service of his Complaint, (id. ¶ 113), and he alleges that none of Defendants have or had any actual interest in the Property because none of Defendants ever acquired anything by way of the various assignments of the mortgage and loan. (Id. ¶¶ 114-18.)

Again, Plaintiff does not overtly ask the Court to vacate the state court's judgment in the Foreclosure Action, but it is clear that finding in favor of Plaintiff on Count IX would annul the mortgage and invalidate the basis of the state court's decision. Thus, the Court will grant Defendants' Motion as to Count IX.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**. An appropriate order shall enter today.

Dated:   4/30/2015                                                     s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge